2013 OK CIV APP 8

**K.M., a minor by and through his mother and next friend, Melissa McDaniel ARNOLD, Plaintiff/Appellant,**

v.

**STEGER LUMBER COMPANY OF DURANT, Oklahoma d/b/a Steger Lumber Company, Defendant/Appellee,**

and

**Barbara Boley; Crescent Creek, L.L.C. d/b/a Crescent Creek Apartments; Danvid Windows Company; and Douglas Payne d/b/a Exterior Renovations, Defendants.**

No. 109,269.

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 21, 2012.

**518**

Professional Corporation, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Mark E. Fields, Steidley & Neal, P.L.L.C., McAlester, Oklahoma, and Stacie L. Hixon, Steidley & Neal, P.L.L.C., Tulsa, Oklahoma, for Defendant/Appellee.

BAY MITCHELL, Judge.

¶ 1 Plaintiff/Appellant, K.M., a minor, by and through his mother and next friend, Melissa McDaniel Arnold, appeals from the trial court's order granting Defendant Steger Lumber Company of Durant, Oklahoma d/b/a/ Steger Lumber Company's ("Steger") Motion for Summary Judgment in this products liability action. Plaintiff additionally appeals the trial court's subsequent order denying Plaintiff's motion for new trial or in the alternative, motion to vacate or amend judgment.[1]

¶ 2 In June 2007, 4–year–old minor, K.M., was injured when he fell out of a second-floor apartment window at the Crescent Creek Apartments in Durant, Oklahoma. The apartment was the residence of K.M.'s baby-sitter, Defendant Barbara Boley, who was out of the room at the time of the incident.

¶ 3 At the time of the fall, K.M. had been playing with a kitten on a bed that had been pushed under an open window. The window was covered only by a sliding screen. A police report indicates a witness saw the child leaning on the window screen and subsequently observed K.M. and the kitten as they fell out of the window.[2] Plaintiff alleges the kitten dislodged the window screen and that K.M. fell as he was reaching to catch the kitten from falling.

¶ 4 Plaintiff contends Steger is strictly liable as the distributer/wholesaler of the window and/or screen, which is allegedly defective and unreasonably dangerous because it "easily pops out" and "allowed the child to fall through the window."[3] Steger argues

John B. Norman, Norman & Edem, P.L.L.C., and Peter J. Ram, Peter J. Ram, a

---

1. The trial court certified the Order granting Defendant Steger's Motion for Summary Judgment (as well as the subsequent Order overruling Plaintiff's Motion for a New Trial or in the alternative, Motion to Vacate or Amend Judgment) as a final adjudication of all claims against Steger pursuant to 12 O.S.2001 § 994.

2. The police report indicates K.M. weighed 40 pounds.

3. Plaintiff seeks to recover damages in strict liability from co-defendant Danvid (the window manufacturer). Plaintiff asserts negligence claims against Defendants Exterior Renovations

the product was not intended to serve as a child-restraint system and therefore, cannot be deemed defective and/or unreasonably dangerous for its failure to prevent the child's fall.[4]   In its Motion for Summary Judgment, Steger argues Plaintiff is unable to establish the necessary elements of a strict liability claim and therefore, Steger is entitled to judgment as a matter of law.   The trial court ultimately granted Steger's Motion.   After her effort to secure post-judgment relief failed, Plaintiff appealed.

¶ 5 The appellate standard of review of a trial court's grant of summary judgment is *de novo. Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, 920 P.2d 122.   This Court will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Ross v. City of Shawnee*, 1984 OK 43, ¶ 7, 683 P.2d 535, 536.  All inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. *Id.*

██  ¶ 6 Under Oklahoma law, a plaintiff in a manufacturers' products liability action must prove that: (1) the defective product was the cause of the injury; (2) the defect was in the product at the time it left the manufacturer's possession and control; and (3) the defect made the product "unreasonably dangerous"[5] to the consumer. *Kirkland v. General Motors Corp.*, 1974 OK 52, ¶¶ 29–31, 521 P.2d 1353, 1363 (finding motorist's intoxication was the cause of the injury

rather than the defective nature of the motor vehicle she was driving at the time of the accident).[6]

¶ 7 On the issue of causation, *Kirkland* provided that "the mere possibility that [the product] might have caused the injury is not enough. . . . Plaintiff must prove ... that he was **injured because the product was defective,** or otherwise unsafe for his use. The fact that a plane has crashed does not establish that it is defective until the possibility of negligent flying has been eliminated." *Id.* at ¶ 33, 521 P.2d at 1363 (emphasis added).   Further, "[i]f **some act of the plaintiff caused the injury, rather than the defective product itself,** causation is missing, and the plaintiff may not recover." *Id.* at ¶ 44, 521 P.2d at 1366 (emphasis added).   "The critical element of causation must be proven by a plaintiff to recover." *Kelley v. Rival Mfg. Co.*, 704 F.Supp. 1039 (W.D.Ok.1989) (granting Crock–Pot slow cooker manufacturer's motion for summary judgment on the basis that plaintiffs produced no evidence that any of the alleged defects in the Crock–Pot caused the injury to the child).

¶ 8 In *Kelley*, an unsupervised 11–month old was injured when he pulled a Crock–Pot off a table, causing its contents to spill on him.   The court noted "[i]t is well known that a young child should not be left unattended near an object which could cause him injury. Plaintiffs ... failed to properly attend their infant son at the time the accident occurred."

---

(installer of the window), Crescent Creek (the owner of the apartment complex), and Barbara Boley (the babysitter).

**4.**  "It is a matter of common knowledge that a screen is not placed in a window for the purpose of keeping persons from falling out." *Schlemmer v. Stokes*, 47 Cal.App.2d 164, 167, 117 P.2d 396, 398. "Window screens are designed to allow air and light into an area while preventing insects from entering." *Lamkin v. Towner*, 138 Ill.2d 510, 150 Ill.Dec. 562, 563 N.E.2d 449 (1990) (noting plaintiff's failure to present any evidence that the window screens failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.); *see also Jeld–Wen v. Gamble,* 256 Va. 144, 501 S.E.2d 393 (1998) (holding manufacturer of window screens have no duty to manufacture a window screen so that it would act as a child restraint); *Drager v. Aluminum Indus.*

*Corp.,* 495 N.W.2d 879 (Minn.App.1993), *review denied* (holding manufacturer of window screen had no duty to design a screen which would prevent appellant's accidental dislodging of screen and fall from window).

**5.**  *Kirkland* adopted the following definition of "unreasonably dangerous": "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Kirkland* at ¶ 26, 521 P.2d at 1362–63.

**6.**  While this doctrine is generally referred to as "manufacturers' products liability," the definition of manufacturers includes "processors, assemblers and all others similarly situated in processing and distribution" of a defective product. *Kirkland* at ¶ 21, 521 P.2d at 1361.

*Id.* at 1044. The court in *Kelley* determined that the cause of the accident was the child being left unattended in a potentially dangerous situation coupled with the child's acts and not by any defect in the Crock–Pot. *Id.* at 1045. Because the plaintiffs in *Kelley* failed to demonstrate the requisite causation element of their products liability claim, the court found the Crock–Pot manufacturer was entitled to judgment as a matter of law.

¶ 9 In this case, just as in *Kelley*, Plaintiff produced no evidence beyond mere allegation that any defect in the product caused the child's injury. Plaintiff seems to suggest that the child's injury alone is proof of the defect, which is insufficient proof. *See Kirkland* at ¶¶ 28–33, 521 P.2d at 1363. The child's injuries were only made possible by the babysitter's inattention and lack of supervision, not by any alleged defect in the window and/or screen. The cause of the accident was the child being left unsupervised in a potentially dangerous situation (and the child's acts which resulted in him falling out of the window) and not by any defect in the window or its components. Any ordinary person could expect a child to injure himself if left unattended on a bed, which had been pushed up against an open window. *See Pineda v. Ennabe*, 61 Cal.App.4th 1403, 72 Cal.Rptr.2d 206 (1998) (holding the predominant cause of a five-year-old child's fall from a second-story window was careless parental placement of bed under window followed by parental negligence in leaving child unsupervised).[7] Insomuch as Plaintiff failed to demonstrate that any alleged defects in the window or its components caused the child's injuries, we find Plaintiff failed to demonstrate the first requisite element of her products liability claim. Thus, Steger is entitled to summary judgment as a matter of law.[8]

¶ 10 Plaintiff also appealed the trial court's denial of her Motion for New Trial or in the alternative, Motion to Vacate or Amend Judgment. "A trial court is vested with **broad legal discretion** in granting or denying new trial, and unless it clearly appears that the trial court erred in some pure simple question of law or acted arbitrarily, its judgment will not be disturbed on appeal." *Dominion Bank v. Masterson*, 1996 OK 99, ¶ 16, 928 P.2d 291, 294 (emphasis added).

¶ 11 In response to Steger's Motion for Summary Judgment, Plaintiff had requested a continuance to permit her additional time to conduct discovery, which she asserted was "in its infancy." Counsel's affidavit, attached to Plaintiff's response, provides "Plaintiffs have not been afforded the opportunity to discover evidentiary materials sufficient to support the opposition of Steger Lumber's allegations." Steger responded by noting Plaintiff has had approximately three years to gather evidence necessary to oppose the summary judgment motion.[9] Plaintiff's request for a continuance was impliedly denied upon the trial court's entry of its Order granting Steger's Motion for Summary Judgment.

¶ 12 Plaintiff subsequently filed her Motion for a New Trial or in the alternative, Motion to Vacate or Amend Judgment on the basis of "newly-discovered evidence" supporting Plaintiff's opposition to Steger's Motion for Summary Judgment. The Motion for New Trial reflects that *after* the trial court had granted Steger's Motion for Summary Judgment, Plaintiffs retained two expert witnesses in the matter. Additionally, the Motion contains a summary of the experts' respective opinions pertinent to the manufacturer's liability as well as reference to an attached affidavit of a fact witness.

7. "A parent oblivious to the obvious danger posed to an unsupervised child near an open upper story window would likely be equally oblivious to a warning [on the window screen]." *Pineda*, 61 Cal.App.4th at 1408, 72 Cal.Rptr.2d 206.

8. Plaintiff's failure to establish the critical first element of her products liability claim is fatal to the cause of action. We therefore need not ad-

dress the remaining two elements of her products liability claim.

9. The original Petition was filed in August 2007. It was dismissed in April 2008 and refiled in March 2009. Steger's Motion for Summary Judgment was filed November 24, 2010—five months after Steger answered, 20 months after the Amended Petition was filed and more than three years after the original Petition was filed.

¶ 13 Plaintiff's Motion for New Trial is merely an untimely, post-judgment, second-bite-at-the-apple-style attempt to introduce evidence opposing Steger's summary judgment motion despite the trial court's previous denial of Plaintiff's request for a continuance. The trial court's decision to deny Plaintiff additional time to conduct discovery for purposes of responding to a summary judgment motion is a discretionary act that will not be disturbed on appeal absent an abuse of that discretion. *Bookout v. Great Plains Regional Medical Center*, 1997 OK 38, ¶ 10, 939 P.2d 1131, 1134. Under the circumstances here, we see nothing but an appropriate exercise of the trial court's discretion. Ordinarily, the time that had passed while this case was pending would have been ample to search for and find any fact witnesses supportive of Plaintiff's claims, to do the discovery necessary to address Steger's defenses, and to address any additional issues raised in Steger's Motion for Summary Judgment. Plaintiff offers *no* explanation that would excuse the delay or outright failure to conduct even the most basic investigation and discovery. Implicit in a legitimate Rule 13(d) request for a continuance is that the requesting party has used *due diligence* in attempting to secure the evidentiary materials needed to oppose a motion for summary judgment. No evidence of timely due diligence is present. The attorney's statement that "Plaintiffs have not been afforded the opportunity to discover [sufficient] evidentiary materials . . ." is entirely self-serving with no basis discernible in the record. There was no abuse of discretion.

¶ 14 This Court's *de novo* review of the record supports the trial court's Order granting Defendant Steger Lumber's Motion for Summary Judgment and it is accordingly AFFIRMED. The trial court's subsequent Order denying Plaintiffs' Motion for a New Trial or in the alternative, Motion to Vacate or Amend Judgment is likewise AFFIRMED.

BELL, P.J., concurs in part and dissents in part; HETHERINGTON, J., concurs.